JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

John H. Thaler,

               Plaintiff,

v.

Brittany Rae Chavez, et al.,

               Defendants.

No.    CV 22-00749-PHX-JAT (JZB)

**ORDER**

## I.    Procedural History

On May 3, 2022, Plaintiff John H. Thaler, who is not in custody, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis.  Plaintiff is an attorney licensed to practice law in Arizona and California.[1]  In a June 17, 2022 Order, the Court granted the Application to Proceed and dismissed the Complaint because it did not comply with the Federal Rules of Civil Procedure.  The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On July 18, 2022, Plaintiff filed his First Amended Complaint (Doc. 15).  On August 2, 2022, Defendant Brittany Rae Chavez, Plaintiff's former wife, filed a Motion to Dismiss the First Amended Complaint (Doc. 16) and a Motion to Declare Plaintiff a

---

[1]   *See*  https://www.azbar.org/for-lawyers/practice-tools-management/member-directory/?Session=a6d143e8-36a1-483d-ab33-83720011cca0&EntityNumber=44657 (last accessed Nov. 1, 2022).  According to the Arizona State Bar website, Plaintiff is currently suspended due to an MCLE related issue.  *Id.*

Vexatious Litigant (Doc. 17).  On August 22, 2022, Defendant Chavez filed a Motion for Ruling (Doc. 18).  The Court will deny Defendant Chavez's Motions and will dismiss the First Amended Complaint and this action.

## II.    Statutory Screening of In Forma Pauperis Complaints

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to review complaints brought by all plaintiffs who are proceeding in forma pauperis and must dismiss a complaint or portion thereof if the plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

## III.    First Amended Complaint

In his First Amended Complaint,[2] Plaintiff sues the Arizona Division of Child

---

[2] Plaintiff refers to at least one of his minor children by his full name.  Thus, the Court will direct the Clerk of Court to seal the First Amended Complaint.

Support Services (DCSS), Maricopa County, the City of Mesa, and the town of Gilbert. Plaintiff also names as Defendants Mesa City Court Judges John P. Tatz and Alicia Lawler and Court Advisor Barbara Kiffmeyer.  Plaintiff sues City of Mesa Prosecutor Paul Hawkins and Assistant City Prosecutor Sabrina DaCosta.  Plaintiff sues City of Mesa Police Officer Jacob G. Roessler.  Finally, Plaintiff sues the following private individuals: his former wife, Brittany Rae Chavez; Dawna Rae Chavez, Brittany's mother; Lawrence Cairo, Dawna's boyfriend; Attorneys Greg Davis and Erica Gadberry; Mark Lammers, Esq.[3]; and Christopher Felbo and Nicoletta Felbo.[4]  Plaintiff asserts civil rights claims under § 1983, as well as state-law claims for conversion, conspiracy to defraud, invasion of privacy, intentional infliction of emotional distress, interference with business, quiet title, accounting, and breach of fiduciary duty.

Plaintiff alleges the following:[5]

Defendant City of Mesa is a "racketeering organization as that term is defined in 18 U.S.C. § 1961."[6]  (Doc. 15 at 7 ¶ 10.)  City of Mesa officials "operate multiple racketeering enterprises through the city."  (Id.)  The City of Mesa officials who are allegedly involved in racketeering enterprises include Defendants Tatz, Lawler, Hawkins, DaCosta, and Roessler, among others.  (Id.)

---

[3]  Lammers represented the Tarzana Falls Homeowners Assoc., Inc., against Plaintiff in CV 2014-093510.  See http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Civil/062022/m10030552.pdf and http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Civil/042022/m9924794.pdf (last accessed Nov. 1, 2022).

[4] Plaintiff also spells these Defendants' surname as "Falbo."

[5] Most of Plaintiff's allegations are irrelevant to his claims and to this Court's analysis of his claims.  The Court will therefore only set forth the facts it relies on to consider the merits of Plaintiff's claims.

[6] "Racketeering activity" is defined, in part, as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1).

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(5).

The Chavez family has been the "primary documents creator/preparer" for the Mesa officials since at least 1995.  (*Id.* ¶ 38.)  Defendants Brittany and Dawna prepare the documents necessary to effectuate the racketeering schemes.  (*Id.* ¶ 37.)  Specifically, according to Plaintiff, over the last 25 years, Defendants Brittany and Dawna have executed hundreds of "phony" trust deeds and related instruments under assumed names; notarized such documents under assumed names; and prepared "phony" court judgments, child support orders and criminal restitution orders.  (*Id.* ¶ 38.)  Defendants Brittany and Dawna have fraudulently executed court documents either as a "clerk" of the court or as a sitting judge.  (*Id.*)  Defendants Brittany and Dawna have also prepared trust deeds with falsified notarizations and related recordable instruments; court pleadings, including falsified Orders of Protection, falsified civil judgments and phony bankruptcy filings; falsified life insurance applications and claim of benefits forms; falsified auto accident and medical provider claims; and corporation and LLC formation documents.  (*Id.* ¶ 37.)  Plaintiff claims Brittany and Dawna also facilitate bribes paid to the public officials necessary to effect and protect the operations.  (*Id.*)

In 2012, apparently before Plaintiff met Brittany, Brittany "falsified" a default judgment against Plaintiff in Los Angeles County Superior Court (Case No. 11E11652)[7] on behalf of others to "extort money from Plaintiff" at a time when Plaintiff was investigating Russian-based organized crime operating in California and Arizona.  (*Id.* ¶ 41.)  The State of Arizona was also investigating these activities, including money laundering.  (*Id.*)

Plaintiff met Brittany in October 2014.  (*Id.* ¶ 40.)  In 2015, Plaintiff and Brittany purchased a home in Gilbert, Arizona.  Plaintiff and Brittany married in April 2016,[8] and Brittany gave birth to their son, M.T., in December 2017.  (*Id.* ¶ 42.)

Through 2018, Brittany hid from Plaintiff her participation in the racketeering

---

[7] *See Tarzana Falls Homeowners v. Thaler*, No. 11E11652 (Cal. Sup. Ct. Nov. 15, 2011).

[8] Plaintiff claims that his marriage to Brittany was void because when they married, Brittany was already married to at least eight other men.  (Doc. 15 at 23 ¶ 136.)

enterprises.  (*Id.* ¶ 43.)  When Plaintiff "began to discover" Brittany and her family's "secret," Brittany sought Plaintiff's help in providing her legal protection and negotiating WITSEC protection.  (*Id.*)

In April 2019, Dawna and the "Mesa participants" discovered Brittany's actions. (*Id.* ¶ 44.)  As a result, Plaintiff's law office computers were "hacked," his credit and debit cards were stolen multiple occasions, and his credit bureau file was tampered with to lower his credit score.  (*Id.*)  On April 20, 2019, Plaintiff's car was tampered with; Plaintiff claims this was an attempt on his life.  (*Id.* ¶¶ 45, 63).  On July 7, 2019, an unidentified individual "spik[ed]" a beverage provided to Plaintiff.  (*Id.* ¶ 63.)  Plaintiff "survived the poisoning," but he had an allergic reaction to "certain ingredients" that caused spikes in his blood pressure.  (*Id.*)

In November 2019, Brittany told Plaintiff that she feared for his safety, her safety, and the safety of their son.  (*Id.* ¶ 45.)  She insisted that Plaintiff and his attorney colleagues pursue WITSEC protection for her.  (*Id.*)  However, before arrangements could be made, the Mesa participants threatened to physically harm Brittany, their son, and Plaintiff if she chose to "turn prosecution witness."  (*Id.*)

Brittany and Dawna falsified domestic violence orders that would be uploaded into the Maricopa County Court database.  (*Id.* ¶ 46.)  On December 12, 2019, a "phony" application and "phony" Order of Protection were created and uploaded into the court database under Case No. FC2019-098471.[9]  (*Id.* ¶ 47.)  Brittany and Dawna then "abducted" M.T. and kept him for two weeks without any contact with Plaintiff.  (*Id.*)

On December 13, 2019, a "phony" Dissolution of Marriage Petition was uploaded into the Maricopa County Court database.  (*Id.* ¶ 48.)  That Petition was signed by Dawna. (*Id.*)

Despite the actions of the Mesa participants, Brittany continued to provide

---

[9] According to Maricopa County Superior Court records, on December 13, 2019, an Emergency Petition for Temporary Orders was issued in FC2019-098211.  *See* http://www.superiorcourt.maricopa.gov/docket/FamilyCourtCases/caseInfo.asp?caseNumber=FC2019-098211 (last accessed Oct. 27, 2022).

information and documents to Plaintiff and others working with him.  (*Id.* ¶ 49.)  Brittany and Plaintiff met secretly on December 29, 2019 to discuss the "predicament."  (*Id.*)  Later that night, Plaintiff was hospitalized due to an "extreme high blood pressure event."  (*Id.*)  On December 30, 2019, Brittany and M.T. visited Plaintiff in the hospital.  (*Id.*)

The two visits did not "sit well" with the Mesa participants.  (*Id.* ¶ 50.)  Using the "phony" Order of Protection, on December 31, 2019, Dawna, acting as Brittany, made false reports to the Town of Gilbert that Plaintiff was contacting Brittany and thus violating the Order.  (*Id.*)  Unbeknownst to Dawna, at the time of the alleged violations, Plaintiff was receiving an angiogram at Banner Heart Hospital.  (*Id.*)  Several months later, Plaintiff was charged with one count of violating the Order of Protection.  (*Id.*)  That proceeding is still pending.  (*Id.*)

In January 2020, Plaintiff and Brittany worked out a 50/50 custody arrangement for M.T.  (*Id.* ¶ 51.)  That agreement was entered as a preliminary custody order on February 20, 2020.  (*Id.*)  Because of the order of protection, Dawna agreed to facilitate custody exchanges.  (*Id.*)  Plaintiff and Brittany also agreed to sell the Gilbert residence.  (*Id.* ¶ 264.)  According to Plaintiff, Brittany "had no intention of selling the residence" and instead intended to "falsify" the sale, rent out the property, and keep the equity and rent payments for herself.  (*Id.*)

On April 4, 2020, allegedly in violation of the February 20, 2020 preliminary custody order, Brittany and Dawna "abducted" M.T.  (*Id.* ¶ 52.)  Between April 4 and 18, 2020, Plaintiff sought the assistance of the City of Mesa police.  (*Id.* ¶ 53.)  The Mesa police department refused to enforce the custody order.  (*Id.*)  M.T. was returned to Plaintiff on April 18, 2020.  (*Id.*)

In late April 2020, the Mesa participants "created a phony restraining order on behalf of Dawna."  (*Id.*)  The terms of the restraining order directly contradicted the requirements of the February 20, 2020 custody order.  (*Id.*)

Thereafter, the Mesa participants "used" the Mesa Police Department to constantly harass Plaintiff.  (*Id.* ¶ 55.)  After almost every custody exchange, Defendant Roessler told

Plaintiff that Brittany or Dawna stated that Plaintiff had committed "some violation of either phony order." (*Id.*)

On April 29, 2020, the Gilbert residence was "allegedly sold," but according to Plaintiff, "no sale took place." (*Id.* ¶¶ 79-80.)  According to Plaintiff, Brittany and "these Defendants conspired to falsify a sale using falsified and forged documents and thereafter reporting to Plaintiff that the property had been sold" and that the proceeds from said sale were held by JetClosings Inc. and thereafter transferred to the Berkshire Law Office and then to Defendant Davis.  (*Id.* ¶ 264.)  Defendant Cairo participated in the "phony sale scheme," as did Cairo's friends, Nicoletta Felbo, and Christopher Felbo, who "posed" as the buyers.  (*Id.* ¶ 85.)  Defendant Gadberry, who represented Brittany in the divorce case, also participated in the "phony sale scheme."  (*Id.* ¶ 86.)

In June 2020, the Town of Gilbert charged Plaintiff with violating the restraining order.  (*Id.* ¶ 252.)  That case remains pending.

Defendant Kiffmeyer is the court-appointed advisor in the custody case.  (*Id.* ¶ 91.)  According to Plaintiff, over the past ten years, Defendants Davis and Kiffmeyer have had a "personal social relationship and a business relationship wherein Davis compensated Kiffmeyer to fix reports" submitted to the court "in favor of" Defendant Davis's clients.  (*Id.* ¶ 93.)  Further, according to Plaintiff, Mesa officials "took action to ensure that Kiffmeyer would be appointed to the marriage dissolution case and would accept bribes in exchange for falsifying her report."  (*Id.* ¶ 94.)  In July 2020, Dawna paid a bribe to Defendant Kiffmeyer, who gave it to Defendant Davis, who in turn then "facilitated the transfer" of the bribe to Defendant Kiffmeyer.  (*Id.* ¶ 98.)

In late August 2020, Dawna and the Mesa participants discovered that Brittany was still providing critical information to Plaintiff, including hard drives and flash drives containing details of bribes to public officials.  (*Id.* ¶ 56.)  Brittany and Dawna, "by and through" Defendant Davis, paid bribes to Defendant Kiffmeyer to modify her report to the Family to Court to omit Brittany's serious mental health and drug issues, while "falsely questioning" Plaintiff's competence and temperament.  (*Id.* ¶ 256.)  Defendant Kiffmeyer's

report minimized Plaintiff's ability to take care of M.T. and "made up" other facts.  (*Id.* ¶ 257.)

On September 19, 2020, Brittany refused to exchange M.T., claiming that Defendant Kiffmeyer had told her not to make the exchange.  (*Id.* ¶ 95.)  M.T. was "taken" that day, and several days later, all communication between Plaintiff and M.T. was cut off.  (*Id.* ¶ 56.)  Plaintiff has not been able to communicate with M.T. in nearly 22 months.  (*Id.*)  The City of Mesa refused to enforce the Custody Order.  (*Id.* ¶ 57.)  Subsequently, according to Plaintiff, Defendant Kiffmeyer admitted to Plaintiff in front of a witness that she had not told Brittany to refuse the September 19, 2020 exchange, but Kiffmeyer "refused to report the same to the Court."  (*Id.* ¶ 96.)

On October 18, 2020, Defendant Roessler and three other individuals dressed in Mesa police uniforms "broke into" Plaintiff's house to try to find portable hard drives and flash drives that contained "incriminating" information that Brittany had provided to Plaintiff.  (*Id.* ¶ 58.)  Plaintiff was not at home, but a client who was staying at Plaintiff's residence was present.  (*Id.* ¶ 59.)  Plaintiff's client was mistaken for Plaintiff and allegedly was beaten, handcuffed, and placed in the garage while officers searched Plaintiff's house.  The drives were not at the residence.  (*Id.*)  Immediately after this incident, Plaintiff moved out of state to ensure his safety.  (*Id.*)

In late October 2020, the court modified the Custody Order to remove Plaintiff's joint custody of M.T.  (*Id.* ¶ 258.)  Sometime in late fall 2020, a bribe was paid to Defendant Kiffmeyer.  (*Id.* ¶ 98.)  The monies for the bribe derived from a life insurance policy payment to Brittany and Dawna, which they had received on October 5, 2020.  (*Id.* ¶ 99.)

Over the next six months, the Mesa participants "invented" 21 charges against Plaintiff for violating the "phony" restraining orders.  (*Id.* ¶ 60.)  According to Plaintiff, a forensic "questioned documents" expert "confirmed" in late March 2021 that the DV Orders and applications were falsified.  (*Id.*)  On April 3, 2021, Plaintiff moved to dismiss the charges.  (*Id.*)  His motion was denied.  (*Id.*)

In May 2021, Plaintiff retained an attorney "for the sole purpose of entering pleas

of Not Guilty on all alleged violations."  (*Id.* ¶ 61.)  Plaintiff's cases were assigned to Defendants Tatz and Lawler.  (*Id.*)  At some point, the trial court had agreed that it would not require bail upon Plaintiff entering his pleas, but after Plaintiff pleaded not guilty, Defendant Lawler, who "conferred privately" with several of the Mesa participants, "changed her mind without explanation and required the posting of a $30,000 cash only bond."  (*Id.*)  Plaintiff's attorney twice requested that Defendant Lawler remove the cash bail requirement, but Defendant Lawler denied those motions.  (*Id.* ¶ 62.)

The trial court set trial dates for late August and late September 2021.  (*Id.* ¶ 64.) Plaintiff's cardiologist informed him that he should refrain from all travel, including to California for "active cases located there" and travel to Arizona, and he should "avoid all stressful events for the remainder of 2021."  (*Id.*)  Plaintiff "made arrangements to put his law cases on hold," with opposing counsel; judges in all but one of his cases agreed with Plaintiff's requests for a continuance.  (*Id.*)  Defendant Lawler ordered the trials to go forward in Plaintiff's absence.  (*Id.*)  Plaintiff requested to appear by video conference, but Defendant Lawler denied the request.  (*Id.*)

On the first morning of the first set of trials, the trial court ordered Plaintiff's attorney to be present and to represent Plaintiff, although Plaintiff had not retained the attorney as trial counsel, and his counsel had not prepared for trial.  (*Id.* ¶ 65.)  Thirteen charges went to trial; Plaintiff was convicted in absentia on twelve of the charges.  (*Id.* ¶ 66.)  Seven additional charges remain pending.  (*Id.*)  Immediately after trial, Defendant Lawler increased the cash only bond to $90,000.  (*Id.* ¶ 67.)

On December 26, 2021, Mesa police officers arrested Plaintiff in Phoenix.  (*Id.* ¶ 68.)  On December 27, 2021, Defendant Lawler increased the cash only bond to $100,000.  (*Id.*)  Plaintiff served 15 days in jail until he could borrow funds to post the bail.  (*Id.* ¶ 69.)  On February 3, 2022, Plaintiff was sentenced to 180 days in jail with credit for 15 days for time served.[10]  (*Id.* ¶ 70.)

---

[10] Plaintiff is charged in Maricopa County Superior Court with one count of unlawful flight from a law enforcement vehicle, with an offense date of May 9, 2021.  His trial is scheduled for December 15, 2022.

Plaintiff asserts 12 causes of action:

First Cause of Action: § 1983 violations against all Defendants[11];

Second Cause of Action: conversion;

Third Cause of Action: conspiracy to defraud;

Fourth Cause of Action: invasion of privacy;

Fifth Cause of Action: intentional infliction of emotional distress;

Sixth Cause of Action: interference with business/prospective economic advantage;

Seventh Cause of Action: injunctive relief against DCSS;

Eighth Cause of Action; declaratory and injunctive relief against the Maricopa County Superior Court[12];

---

[11] Plaintiff's specific claims are: Defendants Brittany and Dawna conspired and schemed to steal money from Plaintiff and to disrupt and deprive him of income (*id.* ¶ 106); Defendants Brittany and Dawna stole Plaintiff's debit and credit cards (*id.* ¶ 109); Defendants Brittany, Dawna, Christopher and Nicoletta Felbo, Cairo, and the City of Mesa unlawfully removed Plaintiff from the family residence (*id.* at 22); all Defendants stole Plaintiff's confidential files and financial information (*id.*); all Defendants filed a "phony" dissolution of marriage (*id.* at 23); all Defendants disrupted Plaintiff's law practice (*id.* at 24); all Defendants created "phony" restraining orders (*id.* at 26); Defendant City of Mesa refused to act pursuant to the Unform Child Custody Jurisdiction and Enforcement? Act (*id.* at 27); Defendants City of Mesa, Tatz, Lawler, De Costa, and Hawkins falsified and prosecuted charges against Plaintiff without jurisdiction (*id.* at 28); Defendants City of Mesa, Roessler, Tatz, Lawler, De Costa, and Hawkins falsely arrested Plaintiff (*id.* at 29); all Defendants illegally searched and seized Plaintiff's residence (*id.*); Defendants City of Mesa, Tatz, Lawler, De Costa, and Hawkins failed to give notice of alleged violations of the protective order (*id.* at 30); Defendants City of Mesa, Tatz, Lawler, DaCosta, and Hawkins refused to transfer files to the superior court (*id.* at 31); Defendants Brittany, Dawna, Tatz, Lawler, the City of Mesa, DaCosta, and Hawkins falsely reported charges to the Chandler Police Department (*id.*); Defendants City of Mesa, Tatz, Lawler, DaCosta, and Hawkins imposed excessive bail (*id.* at 32); Defendants City of Mesa, Tatz, Lawler, DaCosta, and Hawkins refused to postpone Plaintiff's trial when Plaintiff and a key witness were unavailable (*id.* at 33); Defendants City of Mesa Tatz, Lawler, DaCosta, and Hawkins "[c]reat[ed] an" ineffective assistance of counsel (*id.* at 34); Defendants City of Mesa, Tatz, Lawler, DaCosta, and Hawkins falsely arrested Plaintiff on December 26, 2021 (*id.* at 35); Defendants City of Mesa, Tatz, Lawler, DaCosta, and Hawkins interfered with Plaintiff's criminal proceedings (*id.*); Defendant Town of Gilbert wrongfully prosecuted and adjudicated a domestic violence order (*id.* at 36); and Defendants Brittany, Dawna, Kiffmeyer, Davis, and City of Mesa bribed Kiffmeyer (*id.* at 37).

[12] Plaintiff has not named the Maricopa County Superior Court as a Defendant, and, in any event, a state court cannot be sued in federal court. *See Massengill v. Super. Ct. in and for Maricopa County*, 416 P.2d 1009, 1012 (Ariz. Ct. App. 1966) (citing Ariz. Const. art. 6, § 1); *see also* Ariz. Const. art. 6, § 13 (the superior courts "constitute a single court"). Under the Eleventh Amendment to the Constitution of the United States, a state or state agency may not be sued in federal court without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989);

1    Ninth Cause of Action: declaratory/injunctive relief against Maricopa County and

2    Brittany;

3    Tenth Cause of Action: quiet title;

4    Eleventh Cause of Action: accounting;

5    Twelfth Cause of Action: breach of fiduciary duty.

6    **IV.    Failure to State a Claim**

7         To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants

8    (2) under color of state law (3) deprived him of federal rights, privileges or immunities and

9    (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir.

10   2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278,

11   1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury

12   as a result of the conduct of a particular defendant and he must allege an affirmative link

13   between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-

14   72, 377 (1976).

15        **A.    Factually Frivolous Claims**

16        Section 1915(e)(2) grants the Court "not only the authority to dismiss a claim based

17   on an indisputably meritless legal theory, but also the unusual power to pierce the veil of

18   the complaint's factual allegations and dismiss those claims whose factual contentions are

19   clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  A complaint is frivolous

20   if it "lacks an arguable basis either in law or in fact." *Id.* at 325.  "[A] court may dismiss a

21   claim as factually frivolous …  if the facts alleged are 'clearly baseless,' a category

22   encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton v.*

23   *Hernandez*, 504 U.S. 25, 32-33 (1992).  When evaluating claims under this standard, the

24   Court "is not bound, as it usually is when making a determination based solely on the

25   pleadings, to accept without question the truth of the plaintiff's allegations." *Id.* at 32.

26   "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level

27   ───────────────

*Greater L.A. Council on Deafness, Inc. v. Zolin,* 812 F.2d 1103, 1110 (9th Cir. 1987) ("[A]
28   suit against the Superior Court is a suit against the State, barred by the eleventh
amendment.").  Moreover, a state court is not a "person" for purposes of 42 U.S.C. § 1983.
CITE.

1    of the irrational or the wholly incredible." *Id.* at 33.

2          The crux of Plaintiff's claims is his allegations of a wide-ranging, decades-long

3    racketeering enterprise involving numerous private citizens and City of Mesa officials.  The

4    Court finds these allegations are not plausible but are fanciful, fantastic, and delusional and

5    rise to the level of the irrational or the wholly incredible.  *Id.*  Thus, in screening the First

6    Amended Complaint, the Court will not accept these allegations as true.

7          **B.    Duplicative Claims**

8          The Court has broad discretion to control its docket, including the discretion to

9    dismiss a later-filed, duplicative action.  *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d

10   684, 688 (9th Cir. 2007), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880

11   (2008).  "Plaintiffs generally have 'no right to maintain two separate actions involving the

12   same subject matter at the same time in the same court and against the same defendant.'"

13   *Id.* (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977)).  Even an in forma

14   pauperis complaint filed against new defendants may be subject to dismissal as duplicative

15   and frivolous if it repeats the same factual allegations asserted in an earlier case.  *Bailey v.*

16   *Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988); *Van Meter v. Morgan*, 518 F.2d 366, 368

17   (8th Cir. 1975).  The rule against claim splitting is intended "to protect the defendant from

18   being harassed by repetitive actions based on the same claim."  *Clements v. Airport Auth.*

19   *of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995) (quoting Restatement (Second)

20   Judgments, § 26 comment a).

21         To determine whether two successive causes of action are the same, courts use the

22   "transaction test" developed in the context of claim preclusion.  *Adams*, 487 F.3d at 689

23   (noting that "[a] suit is duplicative if the claims, parties, and available relief do not

24   significantly differ between the two actions.").  "'Whether two events are part of the same

25   transaction or series depends on whether they are related to the same set of facts and

26   whether they could conveniently be tried together.'"  *Id.* (quoting *Western Sys., Inc. v.*

27   *Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)).  To that end, courts examine the following

28   criteria: "(1) whether rights or interests established in the prior judgment would be

destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). "The last of these criteria is the most important." *Id.*

On April 2, 2021, Plaintiff filed a Complaint in the United States District Court for the Central District of California against Defendants Arizona Division of Child Support Services, Brittany Rae Thaler, Dawna Rae Chavez, Lawrence Cairo, Barbara Kiffmeyer, Greg Davis, Erica Gadberry, Jacob Roessler, Christopher Felbo, and Nicoletta Felbo, among other Defendants. *Thaler v. Thaler*, CV 21-01419-PHX-DLR (D. Ariz. 2021) (Doc. 1). On August 16, 2021, Judge Dale S. Fischer transferred the case to this Court. *Id.* (Doc. 50). In a June 21, 2022 Order, the Court in CV 21-01419 determined Plaintiff's claims were frivolous and dismissed the case with prejudice.[13] *Id.* (Doc. 90).

Plaintiff's claims against Defendants Brittany, Dawna, Cairo, Kiffmeyer, Davis, Gadberry, Roessler, and Christopher and Nicoletta Felbo in this case are not meaningfully different from his claims against these Defendants in CV 21-01421. Thus, the Court will

---

[13] The Court stated,

"Mr. Thaler's prolix complaint alleges that Ms. Thaler, motivated by a fear a poverty, has engaged in an array of criminal enterprises across multiple states, including money laundering and tax evasion, allegedly accomplished via real estate transactions and non-profit organizations; insurance fraud, allegedly accomplished via phony personal injury claims made on behalf of non-existent persons; skimming money from state-run aid programs; narcotics trafficking; hacking into state databases and fabricating public records; bribing public officials, including judges, police officers, judicial assistants, inspectors, assessors, and accountants; bribing private professionals, such as real estate agents and brokers; bankruptcy fraud; election fraud, allegedly accomplished by creating fake ballots and manipulating others in order to influence, among other races, the 2020 election for Maricopa County Recorder; extortion via "crypto-viruses"; the creation of fake employees on payroll systems in order to collect paychecks and benefits; and murder. What's more, Mr. Thaler alleges that high-ranking government and judicial officials in Maricopa County and the City of Mesa are in on the racketeering enterprise. Mr. Thaler's complaint weaves a delusional and fantastical narrative that does not comport with federal pleading standards."

*Id.*

1    dismiss as duplicative and frivolous Plaintiff's claims against Defendants Brittany, Dawna,

2    Cairo, Kiffmeyer, Davis, Gadberry, Roessler, and Christopher and Nicoletta Felbo.

3         **C.    DCSS**

4         The Arizona Division of Child Support Services is not a proper Defendant in a

5    § 1983 action.  Under the Eleventh Amendment to the Constitution of the United States, a

6    state or state agency may not be sued in federal court without its consent.  *Pennhurst State*

7    *Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045

8    (9th Cir. 1989).  Furthermore, "a state is not a 'person' for purposes of section 1983.

9    Likewise 'arms of the State' . . . are not 'persons' under section 1983." *Gilbreath v. Cutter*

10   *Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (citation omitted).  Therefore, the

11   Court will dismiss Defendant DCSS.

12        **D.    Municipal Defendants**

13        "A municipality may not be sued under § 1983 solely because an injury was

14   inflicted by its employees or agents."  *Long v. County of L.A.,* 442 F.3d 1178, 1185 (9th

15   Cir. 2006).  The actions of individuals may support municipal liability only if the

16   employees were acting pursuant to an official policy or custom of the municipality.  *Botello*

17   *v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005).  A § 1983 claim against a municipal

18   defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the

19   municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury;

20   and (2) explains how such policy or custom caused the plaintiff's injury.  *Sadoski v.*

21   *Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant

22   pursuant to Fed. R. Civ. P. 12(b)(6)).  Plaintiff has failed to allege facts to support that

23   Defendants Maricopa County, City of Mesa, or Town of Gilbert maintained a specific

24   policy or custom that resulted in a violation of Plaintiff's federal constitutional rights.  He

25   also has failed to explain how his injuries were caused by any municipal policy or custom.

26   Thus, the Court will dismiss Plaintiff's § 1983 claims against Defendants Maricopa

27   County, City of Mesa, and Town of Gilbert.

28   . . . .

1

2          **E.    Judicial Immunity**

3          Judges are absolutely immune from § 1983 suits for damages for their judicial acts

except when they are taken "in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*,

435 U.S. 349, 356-57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871));

*Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).  An act is "judicial" when it is a

function normally performed by a judge and the parties dealt with the judge in his or her

judicial capacity.  *Stump*, 435 U.S. at 362; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir.

1990).  This immunity attaches even if the judge is accused of acting maliciously and

corruptly, *Pierson v. Ray*, 386 U.S. 547, 554 (1967), or of making grave errors of law or

procedure.  *See Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988).

          In the context of judicial immunity from suit, the Ninth Circuit has identified several

factors to help determine whether an act is judicial or non-judicial in nature: "whether: (1)

the act is a normal judicial function, (2) the events occurred in the judge's chambers, (3)

the controversy centered around a case then pending before the judge, and (4) the events at

issue arose directly and immediately out of a confrontation with the judge in his or her

official capacity."  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001); *Meek*

*v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999).

          As noted above, the Court does not accept as true Plaintiff's allegations that

Defendants Tatz and Lawler are involved in the purported racketeering enterprise in the

City of Mesa.  Plaintiff alleges that: Defendant Tatz forged the February 20, 2020 Order of

Protection; Defendants Tatz and Lawler knew their courts did not have jurisdiction to

prosecute Plaintiff in Mesa City Court; and Defendants Tatz and Lawler prosecuted

Plaintiff "in furtherance of protecting themselves from being exposed by Plaintiff for

having taken bribes and having participated in the racketeering schemes."  These

allegations pertain solely to Defendants Tatz and Lawler's actions in Plaintiff's criminal

proceedings and therefore arose "directly and immediately out of a confrontation" with

Defendants in their official capacities.  In addition, entering an order of protection and

presiding over criminal proceedings are normal judicial functions.  Plaintiff's bare

allegation that Defendants Tatz and Lawler accepted bribes, devoid of any factual detail, does not negate Tatz and Lawler's judicial immunity.   Thus, the Court will dismiss Plaintiff's § 1983 claims against Defendants Tatz and Lawler.

### F.   Prosecutorial Immunity

Prosecutors are absolutely immune from liability for damages under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).   Immunity even extends to prosecutors for "eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings."   *Buckley*, 509 U.S. at 270; *see also Broam v. Bogan*, 320 F.3d 1023, 1029-30 (9th Cir. 2003) (prosecutor absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges; for knowingly using false testimony at trial; and for deciding not to preserve or turn over exculpatory material before trial, during trial, or after conviction); *Roe v. City & County of S.F.,* 109 F.3d 578, 583-84 (9th Cir. 1997) (absolute immunity for decision to prosecute or not to prosecute and for professional evaluation of a witness and evidence assembled by the police).

For the reasons discussed above, the Court does not accept as true Plaintiff's allegations that Defendants Hawkins and DaCosta are involved in the purported racketeering enterprise in the City of Mesa.   Plaintiff's claims against Defendants Hawkins and DaCosta are based solely on their actions in connection with Plaintiff's criminal proceedings.   Thus, the Court will dismiss Plaintiff's § 1983 claims against Defendants Hawkins and DaCosta based on prosecutorial immunity.

### G.   Specific § 1983 Claims

#### 1.   False Arrest

"False arrest, a species of false imprisonment, is the detention of a person without his consent and without lawful authority." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1064 (D. Ariz. 2012) (quoting *Reams v. City of Tucson*, 701 P.2d 598, 601 (Ariz. Ct. App. 1985)),

*aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013).  Under Arizona law, false imprisonment and false arrest consist of non-consensual detention of a person "without lawful authority."  *Slade v. City of Phx.*, 541 P.2d 550, 552 (Ariz. 1975). "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato,* 549 U.S. 384, 389 (2007) (emphasis in original).

To state a § 1983 claim for false arrest, Plaintiff must show that Defendants made the arrest without probable cause or other justification.  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013).  "'Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'"  *Id.* at 1097-98 (quoting *Maxwell v. County of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)); *see also Edgerly v. City & County of S.F.*, 599 F.3d 946, 953 (9th Cir. 2010) ("To determine whether the Officers had probable cause at the time of the arrest, we consider 'whether at that moment the facts and circumstances within [the Officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964))).  "[P]robable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect *for any criminal offense*, regardless of their stated reason for the arrest." *Edgerly*, 599 F.3d at 954 (emphasis added).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

"[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *see also Price v. Roark*,

256 F.3d 364, 369 (5th Cir. 2001) ("Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest."). "Thus . . . '[i]f there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails.'" *Price*, 256 F.3d at 369 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)); *see also Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (no unconstitutional seizure where police had probable cause to arrest plaintiff for one offense, even if police lacked probable cause to arrest for a second offense).

Here, Plaintiff claims Defendant Roessler falsely arrested him on October 12, 2020. Plaintiff does not allege facts to support that Defendant Roessler lacked probable cause to arrest him.

Plaintiff also alleges that Defendants City of Mesa, Tatz, Lawler, DaCosta, and Hawkins falsely arrested Plaintiff. The City of Mesa cannot "arrest" an individual, and as discussed above, Defendants Tatz and Lawler are entitled to judicial immunity, and Defendants DaCosta and Hawkins are immune for their actions taken in connection with Plaintiff's criminal proceedings, which is all that Plaintiff alleges against them. Plaintiff's false arrest claim will therefore be dismissed.

### 2.    Malicious Prosecution

"One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). "An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner *as to indicate his innocence*." *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1068 (9th Cir. 2004) (emphasis added); *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986) ("When a termination or dismissal indicates in some fashion that the accused is innocent of wrongdoing it is a favorable termination."). If the termination is "merely a procedural or technical dismissal it is not favorable." *Frey*, 722 P.2d at 278; *see also Mills v. City of Covina*, 921 F.3d 1161, 1171 (9th Cir. 2019).

Plaintiff alleges that Defendant Roessler gave testimony in the City of Mesa criminal case to support false charges against Plaintiff.  Plaintiff's criminal proceedings are ongoing, and his malicious prosecution claims therefore have not accrued.  Thus, the Court will dismiss Plaintiff's malicious prosecution claims.

### 3.    Unlawful Search and Seizure

Plaintiff alleges that the search of his residence on October 18, 2020 for portable hard drives and thumb drives violated his Fourth Amendment rights.   The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV. Plaintiff does not allege the search was warrantless, that any warrant was defective, the absence of probable cause, or the absent of exigent circumstances.  Absent more, Plaintiff fails to state a Fourth Amendment claim and this claim will be dismissed.

### H.    *Younger Abstention*

The abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prevents a federal court in most circumstances from directly interfering with ongoing criminal proceedings in state court and applies while the case works its way through the state appellate process.  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) ("[f]or *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system"); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial.").  "[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts." *Drury v. Cox,* 457 F.2d 764, 764-65 (9th Cir. 1972) (per curiam).  Special circumstances occur "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown."  *Carden v. Montana*, 626 F.2d 82,

1   84 (9th Cir. 1980) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).

2        Plaintiff has failed to allege plausible facts to support that he will suffer irreparable

3   harm if this Court abstains from hearing his claims until after he has a chance to present

4   them to the state courts.  *See Younger*, 401 U.S. at 45-46; *Carden*, 626 F.2d at 83-84.  Thus,

5   the Court will abstain from interfering in Plaintiff's ongoing state-court criminal

6   proceedings and will dismiss Defendant Roessler.

7   **V.**    **State Law Claims**

8        The Supreme Court has cautioned that if federal claims are dismissed before trial,

9   related state claims also should be dismissed.  *United Mine Workers of America v. Gibbs*,

10   383 U.S. 715, 726 (1966).  Such claims are more properly addressed by the Arizona courts,

11   which are charged with administering the laws of Arizona and are more familiar with state

12   law.  *See Salman v. City of Phoenix*, No. CV 11-00646-PHX-FJM, 2011 WL 5024263, at

13   *4 (D. Ariz. Oct. 21, 2011) (issues of state law are " best resolved by state courts."); *see*

14   *also Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise

15   supplemental jurisdiction over related state-law claims once it has 'dismissed all claims

16   over which it has original jurisdiction,'" quoting 28 U.S.C. § 1367(c)(3)); *Gini v. Las Vegas*

17   *Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (when federal law claims are

18   eliminated before trial, the court generally should decline jurisdiction over state law claims

19   and dismiss them without prejudice).  Accordingly, the Court declines to exercise

20   supplemental jurisdiction over Plaintiff's state-law claims.

21   **VI.**    **Dismissal without Leave to Amend**

22        "[D]ismissal of a pro se complaint without leave to amend is proper only if it is clear

23   that the deficiencies cannot be cured by amendment or after the pro se litigant is given an

24   opportunity to amend." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002)

25   (citing *Lucas v. Dep't of Corr*., 66 F.3d 245, 248-49 (9th Cir. 1995)).  *See Cervantes v.*

26   *Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (setting forth standard

27   of review and explaining that a district court may dismiss without leave to amend when

28   amendment would be futile); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540

F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (citation and internal quotation marks omitted)).

Plaintiff has already had an opportunity to amend his Complaint.  Moreover, the Court has concluded that Plaintiff's claims are duplicative and frivolous, that Plaintiff asserts claims against Defendants who are immune from liability, and that Plaintiff's claims would require the Court's intervention in his ongoing state criminal proceedings.  In light of these determinations, the Court finds the defects cannot be cured by amendment.  For these reasons, the First Amended Complaint will be dismissed without leave to amend.

**IT IS ORDERED:**

(1)     The Clerk of Court **must seal** the First Amended Complaint (Doc. 15).

(2)     The First Amended Complaint (Doc. 15) and this action are **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Clerk of Court must enter Judgment accordingly and close this case.

(3)     Defendant Chavez's Motion to Dismiss First Amended Complaint (Doc. 16) and Motion to Declare John Thaler a Vexatious Litigant (Doc. 17) are **denied as moot**.  Defendant Chavez's Motion for Ruling (Doc. 18) is **granted** to the extent that the Court has ruled on Defendant's other Motions in this Order.

(4)     The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and certifies that an appeal would not be taken in good faith for the reasons stated in the Order and because there is no arguable factual or legal basis for an appeal.

Dated this 4th day of November, 2022.

_____

James A. Teilborg
Senior United States District Judge